**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**UFCW LOCAL ONE PENSION FUND and its
TRUSTEES: Frank C. DeRiso, John P. Barrett,
Robert Boehlert, Eric Glathar, Kristine Wydro
and Raymond Wardynski**

**and**

**UFCW LOCAL ONE HEALTH CARE FUND
and its TRUSTEES: Frank C. DeRiso, John P.
Barrett, I. Stephen Davis, Eric Glathar,
Donald E. Eliason, Gregory P. Gorea,
Kristine Wydro and Raymond Wardynski,**

**and**

**UFCW LOCAL ONE 401K SAVINGS FUND
and its TRUSTEES: Frank C. DeRiso, John P.
Barrett, Edward Colburn and Eric Glathar,**

                         **Plaintiff,**

  **vs.**                                       **6:12-CV-00632
                                                        (MAD/DEP)**

**ANAMI FOODS, LLC, d/b/a/ East Aurora Jubilee,**

                         **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **SLEVIN & HART, P.C.**<br>1625 Massachusetts Avenue, N.W.<br>Suite 450<br>Washington, D.C. 20036<br>Attorneys for Plaintiffs | **ELIZABETH A. HARLAN, ESQ.** |
| **GETNICK, LIVINGSTON LAW FIRM**<br>258 Genesee Street<br>Suite 401<br>Utica, New York 13502<br>Attorneys for Plaintiffs | **PATRICK G. RADEL, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**
                **MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

This is an action under the Employee Retirement Income Secuirty Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et. seq. Plaintiffs UFCW Local One Pension Fund ("Pension Fund"), UFCW Local One Health Care Fund ("Health Care Fund") and UFCW Local One 401(k) Savings Fund ("Savings Fund") brought this action to recover delinquent employee benefit contributions and withdrawal liability owed by Defendant Anami Foods d/b/a Aurora Jubilee. On January 10, 2013, the Court granted Plaintiffs' motion for default judgment against Defendant with leave to reapply for damages.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 55(b), a default judgment shall be entered if a defendant has failed to plead or otherwise defend an action. *See* Fed. R. Civ. P. 55(b); *see also Parise v. Riccelli Haulers, Inc.*, 672 F. Supp. 72, 72 (N.D.N.Y. 1987). Additionally, "[a] party's default is deemed to constitute a concession of all well-pleaded allegations of liability." *Resolution Trust Crop. v. Forney*, No. 91-cv-0414E(F), 1993 WL 261415, *1 (W.D.N.Y. June 28, 1993) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty*, 973 F.2d 155, 158 (2d Cir. 1992)). While the allegations in the plaintiff's complaint and supporting papers are presumed accurate when determining liability, "the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). To determine the damages, the court "must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.*

29 U.S.C. § 1145 states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained

agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Where there is a violation, ERISA authorizes an aggrieved party to enforce an employer's obligations; specifically, "the Court shall award the plan -

- (A) the unpaid contributions,
- (B) interest on the unpaid contributions,
- (C) an amount equal to the greater of –
  - (i) interest on the unpaid contributions, or
  - (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
- (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
- (E) such other legal and equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Further, "[t]he MPPAA [Multiemployer Pension Plan Amendments Act] requires an employer that withdraws from a multiempoyer pension plan to pay its proportionate share of the plan's unfunded vested employee benefits, the so-called withdrawal liability." *Bowers v. Andrew Weir Shipping, Ltd.*, 27 F.3d 800, 803 (2d Cir. 1994). The withdrawal liability represents "the employer's proportionate share of the plan's 'unfunded vested benefits,' calculated as the difference between the present value of vested benefits and the current value of the plan's assets." *Pension Benefit Gaur. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984).

As a member of the collective bargaining agreement, Defendant was obligated to follow

3

the provisions of the UFCW Local One Pension Fund's Amended and Restated Agreement and Declaration of Trust ("Pension Trust Agreement"), the UFCW Local One Health Care Fund Amended and Restated Agreement and Declaration of Trust ("Health Care Fund Trust Agreement") and the UFCW Local One 401(k) Savings Fund Amended and Restated Agreement and Declaration of Trust ("Savings Trust Agreement"). According to the agreements, an Employer that does not pay contributions when due shall be obligated to pay: (1) the unpaid contributions; (2) interest on the unpaid contributions at the rate set by the Trustees; (3) an amount equal to the greater of (i) interest on the unpaid contributions at the rate specified above by the Trustees, or (ii) liquidated damages of twenty percent of the amount of the unpaid contributions; and (4) reasonable attorneys' fees and costs. *See* Dkt. No. 14-2 at 59–60; Dkt. No. 14-4 at 18; Dkt. No. 14-4 at 45–46.

Additionally, according to the UFCW Local One Pension Fund/UFCW Local One Health Care Fund's Policy for Collection of Delinquent Contributions, the interest on the delinquent contributions accrues from the due date until the date paid. *See* Dkt. No. 14-3 at 3. The interest on the delinquent contributions according to the UFCW Local One 401(k) Savings Fund Policy for the Collection of Delinquent Contributions accrues on the employer contribution due date until the date the contributions are received. *See* Dkt. No. 14-4 at 57. The interest is calculated at the rate of "the greater of (1) the prime interest rate of the Fund's custodian bank plus 2%; or (2) the Pension Fund's actuarial assumed interest rate, per month calculated from the date due until the date paid." *See* Dkt. No. 14-3 at 3–4; Dkt. No. 14-4 at 57. It is the policy of the Funds to give notice to the employer of the delinquent contributions, but if the Contributions are not received ten days after the Funds' notice, or in the case of the Savings Fund if the employer contributions are not received on or before the employer contribution due date, liquidated damages shall

4

increase to 20%. *See* Dkt. No. 14-3 at 4; Dkt. No. 14-4 at 58.

**A.     Pension Fund**

Defendant failed to pay the required contributions to the Pension Fund in January and February 2009. *See* Dkt. 14-3 at 20. The unpaid contribution for these two months is $1,778.21. *See id.* The interest owed on the unpaid contribution, based upon the Pension Fund's 8% actuarial assumed interest rate, from the due dates of February 15, 2009 and March 15, 2009 through January 31, 2013, is $558.07. The interest owed from February 1, 2013 through the judgment date of September 17, 2013 is $88.86. The Pension Fund sent notice to the Defendant of its delinquency on December 29, 2009. *See id.* at 19. Since the delinquent contributions were not received within ten days after this notice, the Pension Fund is entitled to liquidated damages equal to 20% of the total delinquency, which is $355.64. As such, the Court finds that Plaintiffs are entitled to damages and interest in the amount of **$2,780.78** for the unpaid contributions to the Pension Fund.

The Pension Fund is also entitled to withdrawal liability payments from Defendant. On February 28, 2009, the Board of Trustees determined Defendant affected a complete withdrawal, and on June 13, 2011, a letter indicating the total withdrawal liability was sent to Defendant. *See* Dkt. No. 14-3 at 31–33. This amount was calculated to be $209,749.00. In the June 13 letter, a payment schedule was included; however, when Defendant defaulted on the first payment, the full amount of the withdrawal liability and interest was accelerated and became immediately due. Defendant received a letter indicating this on December 28, 2011. *See* Dkt. No. 14-3 at 37. The interest on the payment through January 31, 2013 is $18,763.14, which is based upon the Pension Fund's actuarial assumed interest rate of 8% per annum. The interest from February 1, 2013

through the judgment date of September 17, 2013 is $10,481.70. The Pension Fund is also entitled to liquidated damages equal to 20% of the withdrawal liability because the payments were not received within ten days. The liquidated damages are equal to $41,949.80. As such, the Court finds that Plaintiffs (the Pension Fund) are entitled to damages and interest in the amount of **$280,943.64** for withdrawal liability.

**B.     Health Care Fund**

Defendant did not pay contributions to the Health Care Fund in January or February 2009. The unpaid contributions for these two months is $24,744.00. A letter was sent on December 29, 2009 to Defendant indicating that payments had not been made and, on May 11, 2011, another letter was sent demanding that the delinquency be paid. *See* Dkt. No. 14-3 at 19, 22–23. In addition to the contributions, Defendant was obligated to make payroll deductions for part-time employees purchasing dependant coverage under the Health Care Fund and to remit the amounts to the Fund within fifteen days after the last day of the last payroll period each month. *See* Dkt. No. 14-2 at 22. Defendant did not remit the payroll-deducted employee contributions for the month of January 2009, owing $1,376.28, thereby making the total contribution due $26,120.28. The interest on the delinquency through January 31, 2013, applying the 8% interest rate, is $7,766.23. The interest from February 1, 2013 through the judgment date of September 17, 2013 is $1,305.30. Additionally, Defendant failed to pay the delinquent contributions within ten days of notice and therefore the Health Care Fund is entitled to liquidated damages of $4,948.80. As such, the Court finds that Plaintiffs are entitled to damages and interest in the amount of **$40,140.61** for unpaid contributions and Defendant's failure to remit payroll deductions to the Health Care Fund.

6

**C.     Savings Fund**

Defendant did not make employer contributions to the Savings Fund for the month of January 2009. The unpaid contributions for this month is $656.00. On December 29, 2009, a letter was sent to Defendant demanding the delinquency amount. *See* Dkt. No. 14-3 at 19. The interest for this amount of time, calculated through January 31, 2013, using the 8% interest rate, is $207.91. The interest from February 1, 2013 through the judgment date of September 17, 2013 is $32.78. Defendant's Employer Contributions were not received by the due date, so the Savings Fund is entitled to liquidated damages of $131.20, equal to 20% of the delinquency. As such, the Court finds that Plaintiffs are entitled to damages and interest in the amount of **$1,027.89** for Defendant's failure to make employer contributions to the Savings Fund.

**D.     Attorneys' fees and costs**

Under Section 502 of ERISA, an award of reasonable attorneys' fees and costs is mandatory in an action where the plaintiff recovers delinquent contributions. See 29 U.S.C. § 1132(g)(2)(D); *Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004). The Second Circuit looks to a "presumptively reasonable fee" as determined by a "reasonable hourly rate multiplied by a reasonable number of expended hours" to determine the reasonableness of attorneys' fees. *See Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008).

"District courts have broad discretion in determining the reasonable rate but should 'bear in mind all of the case-specific variables that . . . have [been] identified as relevant to the reasonableness of attorneys' fees,' including, the attorney's customary hourly rate and the

7

experience, reputation, and ability of the attorneys." *Omega Comm'n Servs., Inc.*, 543 F. Supp. 2d at 164 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 186 n.3 (2d Cir. 2008)) (internal quotation marks omitted). Rates are reasonable when they conform to those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

The Fifth Circuit outlined twelve factors to be considered by a court in determining what, if any, attorney's fees should be awarded in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L .Ed. 2d 67 (1989).[1] The United States Supreme Court, in *Hensley*, 461 U.S. at 436, acknowledged that the *Johnson* factors are relevant to evaluating claims for attorney's fees, noting that the most critical factor is the degree of success obtained. Finally, the *Johnson* factors are to be considered within the context fo the relevant legal "community;" specifically, the "district where the district court sits." *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190. Although the court may use an out-of-district hourly rate in calculating the presumptively reasonable fee "if it is clear that a reasonable, paying client would have paid those higher rates[,]" the court presumes "a reasonable, paying client would in most cases hire counsel

---

[1] The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717–19; *see also Rivera v. Corporate Receivables, Inc.*, 540 F. Supp. 2d 329, 337-38 n.5 (D. Conn. 2008) (applying the *Johnson* factors).

8

from within his district, or at least counsel whose rates are consistent with those charged locally." *Id.* at 191.

### *1. Slevin Hart, P.C.*

In the declaration submitted by Elizabeth Harlan, she sets for the hourly billing rates for the attorneys and paralegals who participated in the prosecution of this case as follows: (1) Elizabeth Harlan, associate with ten-years experience, $315; (2) Sharon M. Goodman, partner with twenty-years experience, $395; (3) Sarah E. Sanchez, partner with twelve-years experience, $315; (4) Alexandra Tsiro, a former associate with fourteen-years experience, $315; (5) Laura O. Aradi, as associate with approximately eight-years experience, $280; (6) Laura A. Szarmach, an associate with one-year experience, $240; (7) Rachel Hansen, a paralegal, $165; and (8) James Cartales, a paralegal, $160. *See* Dkt. No. 14-5 at ¶ 7. Ms. Harlan asserts that a total of 49.3 hours has been billed to this matter, for a total of $11,986.00 in fees. *See id.* at ¶ 8. Ms. Harlan asserts that "[e]ach of these rates is customary, reasonable, and appropriate given the experience and expertise of the individuals working on the matter, and the location of the Firm." *See id.* at ¶ 7.

Contrary to Ms. Harlan's assertions, these hourly rates are not reasonable in the present matter. In *Engineers Joint Welfare Fund v. Western New York Contractors, Inc.*, No. 5:09-CV-417, 2010 WL 2682224 (N.D.N.Y. July 2, 2010), the plaintiffs brought an ERISA action alleging that the defendants, among other things, (1) failed to make contributions to various union pension plans, and (2) failed to timely remit contributions and deductions. *See id.* at *1. After the court entered default judgment, the plaintiffs moved for attorney's and costs. *See id.* at *3. The plaintiffs sought attorneys' fees "at the rate of $235.00 per hour for the work that their attorneys performed in this action during 2008, $247.00 per hour for the work that their attorneys

9

performed in this action during 2009, and $252.00 per hour for the work their attorneys performed in this action during 2010." *Id.*  Further, the plaintiffs sought $128.00 per hour for the work performed by paralegals in 2008, $134.00 for work performed in 2009, and $137.00 for work performed in 2010.  *See id.*  Citing to another recent case from the Northern District of New York, Judge Suddaby concluded that "'the reasonable hourly rate for an attorney . . . in this community who litigates cases such as this one, particularly where Defendant has defaulted, is $210.00 . . . [and] the reasonable hourly rate for the work of paralegals . . . is $80 per hour.'" *Id.* at *4 (quoting *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Catone Constr. Co, Inc.*, No. 08-CV-1048, 2009 WL 4730700, *18-*19 (N.D.N.Y. Dec. 4, 2009)); *see also S.E.C. v. Smith*, 798 F. Supp. 2d 412, 439 (N.D.N.Y. 2011) (finding that $225 was an appropriate hourly rate for the partners involved in the litigation and $190 for a senior associate); *Martinez v. Thompson*, No. 9:04-cv-440, 2008 WL 5157395, *16-*17 (N.D.N.Y. Dec. 8, 2008) (approving a fee of $275 per hour for a complex civil rights action that proceeded to trial).

Having reviewed the relevant case law and the prevailing rate for cases of this nature, the Court finds that the following hourly rates are appropriate in the present matter: (1) $250.00 for Ms. Goodman; (2) $225.00 for Ms. Harlan, Ms. Sanchez and Ms. Tsiro; (3) $200.00 for Ms. Aradi; (4) $175.00 for Ms. Szarmach; and (5) $100.00 for the two paralegals, Ms. Hansen and Mr. Cartales.  Plaintiffs have not met their burden of establishing that the Court should apply the forum rule's exception permitting use of out-of-district hourly rates.  This result is particularly appropriate in light of the nature of the case and the fact that Defendants defaulted.  *See Engineers Joint Welfare Fund*, 2010 WL 2682224, at *4 (citation omitted).

As to the number of hours, the Court finds that the request is supported by

contemporaneous time records and reasonable.  Moreover, the requested costs are reasonable.  As set forth in the time records and pursuant to the adjusted hourly rates discussed above, the Court awards attorneys' fees and costs for Slevin Hart, P.C. as follows:

| **Attorney/Paralegal** | **Rate** | **Hours** | **Total Fees** |
|---|---|---|---|
| Goodman | $250.00 | 0.20 | $50.00 |
| Harlan | $225.00 | 17.00 | $3,825.00 |
| Sanchez | $225.00 | 2.50 | $562.50 |
| Tsiro | $225.00 | 0.40 | $90.00 |
| Aradi | $200.00 | 2.70 | $540.00 |
| Szarmach | $175.00 | 7.10 | $1,242.50 |
| Hansen | $100.00 | 17.20 | $1,548.00 |
| Cartales | $100.00 | 2.20 | $220.00 |
| | **TOTAL:** | **49.30** | **$8,200.00** |

In addition to $8,200.00 in attorneys' fees, Plaintiffs are entitled to costs of $51.71.

Based on the foregoing, the Court awards Plaintiffs attorneys' fees and costs for the work performed by Slavin Hart, P.C. of **$8,251.71**.

### 2. Getnick, Livingston, Atkinson & Priore, LLP

Plaintiffs request attorneys' fees and costs for the work performed by Getnick, Livingston, Atkinson & Priore, LLP, who served as local counsel in this case, of $2,107.30.  *See* Dkt. No. 14-6; Dkt. No. 14-7.  The affidavit of Patrick G. Radel states that the "hourly rate charged was $200 for attorney time and $100 for paralegal services."  *See* Dkt. No. 14-6 at ¶ 9.  Plaintiffs support their request with contemporaneous time records and proof of costs.  *See* Dkt. No. 14-7.

Having reviewed Plaintiffs' application for fees and costs for work performed by Getnick, Livingston, Atkinson & Priore, LLP, and the amount of time they expended in pursuing this action, the Court finds that they are reasonable and supported by the record.  Accordingly, the Court awards Plaintiffs **$2,107.30** for costs and fees attributable to Getnick, Livingston, Atkinson & Priore, LLP.

## III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs are entitled to damages in the following amounts and allocations:

    **(1) Pension Fund:**        **$2,780.78** and
                                        **$280,943.64**

    **(2) Health Care Fund:**    **$40,140.61**

    **(3) Savings Fund:**        **$1,027.89**

and the Court further

**ORDERS** that Plaintiffs are awarded **$8,251.71** for attorneys' fees and costs attributable to Slavin Hart, P.C.; and the Court further

**ORDERS** that Plaintiffs are awarded **$2,107.30** for attorneys' fees and costs attributable to Getnick, Livingston, Atkinson & Priore, LLP; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiffs' favor and close this case; and the Court further

**ORDERS** that Plaintiffs shall serve a copy of this Memorandum-Decision and Order on Defendant.

**IT IS SO ORDERED.**

Dated: September 17, 2013
        Albany, New York

                                                  Mae A. D'Agostino
                                                  U.S. District Judge